United States District Court
Southern District of Texas
**ENTERED**
April 23, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| United States of America | § | |
| | § | |
| v. | § | NO. 4:21-CR-54 |
| | § | |
| Lola Kasali | § | |
| | § | |

## JUDGE PALERMO'S
## REPORT AND RECOMMENDATION

Pending before the Court are the U.S. Probation Office's Petitions for Warrant or Summons for Offender Under Supervision and Supplement to the Petition for Warrant or Summons for Person Under Supervision dated October 28, 2025, December 9, 2025, and December 11, 2025. ECF Nos. 396, 413, and 414.[1] On December 12, 2025, before she was represented by counsel, Defendant Lola Kasali filed a response to the petition styled as a motion. ECF No. 417.[2] The Court set the final hearing on the supervised release violation ("SRV") for December 12, 2025, at 2:00 p.m. Notice of Setting, ECF No. 412. Defendant failed to appear and the Court issued a warrant for her arrest. Arrest Warrant, ECF No. 422. The final SRV hearing was then reset for February 11, 2026, at 3:00 p.m. At that hearing, appointed

---

[1] On December 1, 2025, Judge Sim Lake referred the Petition and all pending motions to Judge Dena Palermo. Order of Referral, ECF No. 411.

[2] On January 16, 2026, the Court appointed counsel for Defendant. Order Appointing Counsel, ECF No. 425.

counsel asked the Court to set a Faretta hearing on Defendant's motion to relieve her attorney, ECF No. 439. The Faretta and SRV hearings were set for March 3, 2026 and were held on March 3, 4, and 9, 2026. The Government was represented by Assistant United States Attorney Belinda Beek. Defendant was represented by Assistant Federal Public Defender Alex Rosa-Ambert.

## I.    BACKGROUND

To unlawfully enrich herself and obtain money from the Small Business Administration ("SBA"), Defendant submitted two materially false and fraudulent Paycheck Protection Program ("PPP")[3] loan applications in the amounts of $1,937,500 and $1,875,944, on behalf of two entities she purportedly owned to two federally insured financial institutions. ECF No. 27 at 3, 4. In addition to other false and misleading statements made in seeking the PPP loans, Defendant misrepresented the number of employees and payroll expenses the businesses had. *Id.* at 3.

On December 8, 2021, a jury found Defendant guilty of making false statements to a financial institution in violation of 18 U.S.C. § 1014 (two counts), and bank fraud, in violation of 18 U.S.C. § 1344 (two counts). ECF Nos. 27; 174. On April 7, 2022, the Defendant was sentenced to a term of 70 months' imprisonment on each count, to run concurrently, in addition to five years of

---

[3] The PPP was part of the Coronavirus Aid, Relief, and Economic Security ("CARES") Act designed to provided emergency financial assistance to Americans who suffered negative economic effects caused by the COVID-19 pandemic. ECF No. 27 at 1–2.

supervised release term ("SRT") on each count, also to run concurrently. Judgment, ECF No. 234. In addition, the Court imposed conditions, including restitution of $2,027,686.64, a special assessment of $400, and special conditions that included a mental health evaluation and treatment, and a prohibition on incurring any new credit charges or lines of credit without advance approval of the probation officer. Judgment, ECF No. 234.  On January 18, 2024, the Court reduced the Defendant's sentence to 57 months' imprisonment on each count pursuant to 18 U.S.C. § 3582(c)(2). Order, ECF No. 371. On August 2, 2024, mandate issued on the Fifth Circuit's judgment affirming the District Court. Order of United States Court of Appeals, ECF No. 376.

Defendant was released from the Bureau of Prisons ("BOP") on January 4, 2025—over two years before the end of her 57-month sentence. ECF No. 409-1 at 3. On January 7, 2025, Defendant began her five years of supervised release. ECF No. 396 at 1. On October 28, 2025, Defendant's Probation Officer filed a Petition for Warrant or Summons alleging: failure to pay restitution; failure to follow probation officer's instructions; failure to participate in mental health treatment; failure to permit probation officer to visit you at home or elsewhere. ECF No. 396.[4]

---

[4] Shortly after Probation filed its first Petition outlining Defendant's supervised release violations, Defendant filed a motion to modify or reduce the SRT stating, among other things, that she had shown she was rehabilitated and further supervision would serve no purpose. ECF No. 397. The Court recommended denying the motion, finding that it was prematurely filed under the statue, she had not over-served her sentence as asserted, and she had not shown rehabilitation as claimed

Summons issued and the Court set an initial appearance and counsel determination hearing for November 17, 2025. *See* ECF No. 407. On November 17, 2025, a few minutes prior to the scheduled hearing, Defendant contacted the Court via phone, claiming she was having car issues, which would prevent her from appearing. Therefore, the Court reset the hearing for the next day, November 18, 2025. ECF Nos. 399, 413, 414. On November 18, 2025, Plaintiff appeared without counsel and indicated she would retain her own counsel, Minute Entry, Nov. 18, 2025. The Court set this matter for a final revocation hearing on December 12, 2025. Order, ECF No. 405.[5] Defendant was released on the same supervised release conditions.

After the initial appearance hearing, on December 9, 2025, Defendant's Probation Officer filed a Superseding Petion for Warrant or Summons for Person Under Supervision to update the alleged violations and recommendation. ECF No. 413. Probation listed the alleged violations as: failure to pay restitution; failure to follow probation officer's instructions; failure to participate in mental health treatment; failure to permit probation officer to visit her at home or elsewhere; and failure to pay special assessment. ECF No. 413. Probation recommended the term of supervision be revoked. ECF No. 413.

---

considering the Petition on file showing violations of her supervised release. R&R, ECF No. 410. Judge Lake adopted the R&R. Order, ECF No. 420.

[5] The SRV hearing was set before Judge Lake. *Id.* Subsequently, Judge Lake referred the hearing and all pending motions to Judge Palermo. Order, ECF No. 411. Judge Palermo reset the SRV hearing for the same time, December 12, 2025, at 2:00 p.m. Notice of Setting, ECF No. 412.

On December 11, 2025, Probation filed a Second Superseding Petition, alleging additional violations, ECF No. 414, including incurring new credit charges and opening additional lines of credit without approval. *Id.* Again, Probation recommended the term of supervision be revoked. *Id.*

On December 12, 2025, Defendant filed an unverified two-day work excuse dated December 12, 2025, on HCA Houston Healthcare letterhead, ECF No. 415, and failed to appear at the final SRV hearing. The Court issued a warrant for Defendant's arrest and set Defendant for an initial appearance on the Superseding Petition for January 15, 2026. ECF Nos. 422, 423, 424. On December 12, 2025, Defendant filed a motion to dismiss and response to the Petition. ECF No. 417. Three days later, on December 15, 2026, Defendant filed a motion to quash the warrant, claiming that she had a "medical emergency requiring hospitalization, rendering her physically unable to appear before the Court. ECF No. 419 ¶ 2. Plaintiff filed a supporting declaration, making the same statement "under penalty of perjury." ECF No. 419-1 at 1-2. The declaration attached the same work excuse. *Id.* at3.

Defendant was arrested on January 14, 2026. ECF No. 424.  She appeared at the initial appearance hearing without counsel even though she had told the Court on November 18, 2025 that she intended to retain counsel, Minute Entry, Nov. 18, 2025. She asked for additional time to retain counsel. Minute Entry, Jan. 15, 2026. The Court set the final supervised release violation for hearing on February 11, 2026,

at 2:00 p.m. Order, ECF No. 426. Defendant was ordered to remain in detention pending the final revocation hearing. Order, ECF No. 427. Because Defendant has not retained counsel since November while she was on release, two days after the initial appearance, the Court appointed the Federal Public Defender as defense counsel for Defendant. Order, ECF No. 425.

At the scheduled final revocation hearing on February 11, 2026, Defendant advised the Court that she wanted to represent herself. Her court appointed attorney requested a Faretta hearing. Minute Entry, Feb. 11, 2026. Consequently, the Court reset the SRV hearing for a *Faretta* hearing and SRV hearing on March 3, 2026. *Id.* On February 20, 2026, Defendant filed a motion to relieve her counsel. ECF No. 439. At the March 3, 2026 *Faretta* hearing,[6] the Court sought to undertake the requisite questioning of Defendant to determine whether she may proceed with self-representation but was unable to because of Defendant's barrage of objections and interjections into the proceeding.[7] On March 4, 2026, after taking the motion under

---

[6] *Faretta v. California*, 422 U.S. 806 (1975).

[7] The Court ruled on the record, on March 4, 2026, denying Defendant's motion to represent herself based on her obstructionist behavior during the Faretta hearing on March 3, 2026, refusing to answer the Court's questions and repeatedly stating that she did not waive her right to a probable cause hearing on the arrest warrant. Despite the Court's explanation that Defendant's request for a probable cause hearing on the arrest warrant was moot because the Court and counsel were there to proceed on the SRV hearing, Defendant used up the hour set aside for the Faretta hearing with her objections and other statements, obstructing the Court's ability to conduct the hearing. *Lewis v. Davis*, No. CV 4:18-1049, 2019 WL 330460, at *7 (S.D. Tex. Jan. 25, 2019) (quoting *Faretta*, 422 U.S. at 834 n. 46) (recognizing that a defendant's right to represent herself can be denied when she obstructs the court's proceedings, and is not a license to abuse the dignity of the courtroom or fail to comply with the rules of procedure and substantive law).

advisement, the Court denied Defendant's motion to represent herself and proceeded with the SRV hearing.

## II.   PETITIONS

The PO filed the petitions alleging seven violations:

(1)   Failure to pay restitution as directed (Grade C violation);

(2)   Failure to follow U.S. Probation Officer's instructions (Grade C violation);

(3)   Failure to participate in mental health treatment (Grade C violation);

(4)   Failure to permit a U.S. Probation Officer to visit at home or elsewhere (Grade C violation);

(5)   Failure to pay special assessment fee as directed (Grade C violation);

(6)   Incurring new credit charges without approval of the Probation Officer (Grade C violation); and

(7)   Incurring or opening additional lines of credit without approval of the Probation Officer (Grade C violation).

ECF Nos. 396, 413, and 414.

With respect to the first violation—failure to pay restitution, the Petition alleges that on April 7, 2022, Defendant was ordered to pay restitution in the amount of $2,027,688.64 in installments of $300 per month to commence 60 days after release from prison. Defendant has not made any payments from March 2025 through October 2025. On July 28, 2025, Defendant received a credit of $1,937,500.00 from seized funds. Despite her PO's instructions to pay the remaining balance, Defendant refused to comply. ECF No. 414 at 2 ¶ 1.

Regarding the second violation—failure to follow Probation Officer's instructions, the Petition alleges that Defendant claims to suffer from nerve damage and is wheelchair bound and unable to walk or stand, preventing her from obtaining full-time employment.[8] She has been instructed to provide documentation supporting her medical condition and restrictions but has failed to do so. *Id.* ¶ 2.

Third, as to her failure to participate in mental health treatment, the Petition alleges that Defendant is court ordered to participate in mental health treatment. She eventually agreed to complete the assessments but was uncooperative during the evaluation and refused to answer questions, impeding the provider's ability to make a full mental health assessment. *Id.* at 2-3 ¶ 3.

In the fourth violation, the Petition charges that Defendant has failed to permit the Probation Officer to visit her at home or elsewhere.[9] Defendant has

---

[8] The Court notes that this issue has been recurring throughout her pretrial and posttrial history. As the Court summarized in the Order revoking her bond, ECF No. 56, Defendant claimed she was paralyzed from the waist down, requiring her to use a wheelchair. When she was arrested for her pretrial release violations, the arresting Deputy Marshal saw Defendant drive a car to her mother's house, exit the car, and walk into the house, establishing that she did not need a wheelchair and was not paralyzed. When he went to the mother's front door and entered the house, Defendant was sprawled on the floor of a back bedroom and claimed she could not walk, forcing the officers to carry her out. When the officer accidentally stepped on her toe, Defendant screamed, "Ouch," establishing again that she was not paralyzed. *Id.* at 4. During this exchange, Defendant's mother repeatedly told her to stop pretending and to walk out of the house. *Id.*

[9] The Court again notes that Defendant made it difficult for Probation to supervise her during her pretrial release. Among other things, she changed phone numbers several times and refused to answer the phone when her officer called her. When she did answer, she was belligerent and uncooperative. Ultimately, her mother had to act as the intermediary between Probation and Defendant. Order, ECF No. 56 at 3-4. In addition, she repeatedly refused to come to the Probation office for inspection of her GPS monitor, claiming she or someone in her family had COVID, but she refused to provide proof of her infection. *Id.* at 2-3. She refused to check in as required and

refused to comply with unscheduled home visits. Of seven unscheduled visits, only one was successful. On the last attempted home visit, someone responded to the door but, after the Probation Officer identified herself, the woman refused to open the door. Defendant refused to have face-to-face meetings and would call her Probation Officer on the phone or send an email to check in. *Id.* at 3 ¶ 4.

On April 7, 2022, the Court ordered Defendant to pay a $400.00 special assessment fee. At the time the Petition was filed, Defendant owed $140.00, failing to pay in March through October 2025. In November, after she was aware of the Petition, Defendant made a $10.00 payment. *Id.* at 3 ¶ 5.

Finally, as to the sixth and seventh violations, the Court prohibited Defendant from incurring new credit charges or opening additional lines of credit without the approval of her Probation Officer. In December 2025, the probation office conducted a credit check and discovered that Defendant had obtained a credit card from Synchrony Bank – Amazon with a credit limit of $150.00. She did not have permission to open this account. *Id.* at 3 ¶ 6. In addition, probation discovered that Defendant had obtained at least eight student loans from the Department of Education, totaling $19,048.00. She did not have permission to obtain these loans. She never informed her Probation Officer that she was a student. *Id.* at 3-4 ¶ 7.

---

refused to have her GPS monitor inspected as required, violating the conditions of her release. *Id.* at 3.

The Probation Officer asked that Defendant's supervised release be revoked because she was unable to effectively carry out her supervisory responsibilities. *Id.* at 4.

## III.    THE FINAL REVOCATION HEARING.

At the revocation hearing, held on March 4 and 9, 2026, Defendant did not plead true to the charges. The Government called two witnesses to support the charges: U.S. Probation Officer Azuree Jackson ("PO") and U.S. Postal Inspector Kyle Shadowence ("PI"). At the hearing, the Government stated that the fifth claim of failure to pay the special assessment was now moot because Defendant paid the money owed. The other charges remained.

### A. Testimony of Defendant's Probation Officer Supports the Charges.

PO testified that she was assigned to supervise Defendant since January 2025. She first met Defendant on January 9, 2025, during a home visit. After that, on January 14, 2025, Defendant reported to the Probation office for an intake appointment, to review the conditions of her release. She received and signed a copy of the agreement with Probation. She signed the conditions of release, which contained five mandatory conditions, four special conditions, and fifteen standard conditions. Defendant represented that she understood the conditions and would abide by them.

As to the first violation, the restitution order was part of the judgment. She

was ordered to pay $2,027,686.64. After a credit of $1,937,500.00 from funds that were seized, Defendant owed a balance of $90,186.64. The first payment was due 60 days after her release from prison. She should have paid $300.00 per month. She missed the first payment and made no monthly payments. PO spoke to Defendant about her failure to pay during office and home visits. Defendant repeatedly said that she did not owe the money. She therefore said she would not make any payments. PO's Supervisor offered Defendant a payment reduction plan as an accommodation to her financial situation. Defendant was not interested in a reduced payment plan. PO testified that she repeatedly raised the payment of restitution with Defendant during their in-person visits at home and in the Probation office.

Regarding the second violation—failure to follow instructions, employment is a condition of supervised release. Defendant said that she was employed, answering phones at her mother's hair braiding business. PO testified that this employment was not suitable because it was less than 30 hours per week and did not pay minimum wage. In addition, Defendant was paid in cash and failed to document her income, although her mother wrote a letter stating that Defendant worked for her. In addition, Defendant claims that she could not work because she was wheelchair bound. She claimed to suffer from nerve damage and could not walk. PO asked for medical documentation to support her medical limitation. Defendant never provided supporting documents. PO testified that she repeatedly asked for the

11

supporting medical documents. On cross-examination, PO testified that Defendant said that she was assaulted in Dubai and was treated in Dubai. She said she did not have records because they were in Dubai.

The third violation—failure to participate in mental health treatment stems from Judge Lake's order. PO testified that Defendant did go to the mental health appointments but did not participate sufficiently for the therapists to be able to fully assess her. On cross-examination, PO testified that Defendant went to two separate mental health service providers. She reported for the appointment, but she did not participate. The providers said she refused to answer questions and they were unable to make a full evaluation. The second assessment on March 5, 2025, makes a recommendation to complete a psychiatric treatment assessment and to see if she needs counseling.

The fourth violation charges that Defendant failed to permit the PO to visit at home or elsewhere. PO testified that a routine part of supervision includes unannounced home visits to see if the person under supervision has reintegrated into the community and is in compliance with the terms of release. In most cases, unannounced visits are successful. They are conducted in the early morning, before 8:00 a.m. or after 5:00 p.m. or on weekends. Contrary to this usual practice, Defendant would not allow PO to make the unannounced visits. She insisted that the visits needed to be scheduled or announced in advance. She claimed that having the

PO pop up at her home was rude. She said instead she could report to the Probation office or have a scheduled home visit.

PO further testified to the history of visits with Defendant:

- Defendant was released from BOP in early January 2025. Defendant did not call the Probation office to notify them that she had been released as she was required to do.

- PO attempted a home visit on January 9, 2025. That visit was successful. PO was able to see Defendant and gave her reporting instructions.

- On April 29, 2025, the PO made an unannounced visit. Defendant and her mom confronted PO, complaining that she showed up too early and unannounced. The mom was upset and made comments to PO about her skin color and other personal comments. PO testified she was not able to enter the Defendant's house. But Defendant answered all of PO's questions.

- On May 2 and May 25, PO made unannounced visits to Defendant's home. No one answered the door.

- After the series of unsuccessful visits, PO scheduled the next visit for June 25, 2025. PO and her Supervisor arrived at Defendant's house at the scheduled time. They saw Defendant and her mom in a vehicle.

Defendant told PO she had to leave and would not let PO and her Supervisor in the house. At that point, Defendant had been on release for more than 6 months and PO needed to complete a home inspection. The visit was unsuccessful.

- On July 19, 2025, PO successfully attempted another announced visit. At that time, she was able to inspect the house and complete the home visit.

- On August 25, 30, and September 5, 2025, PO attempted home visits. These visits were all unsuccessful because no one answered the door.

- PO scheduled an announced visit for September 19, 2025 because there were so many unsuccessful unannounced visits. This visit, even though scheduled, was not successful. Defendant answered her phone and told the PO that she had left the house and was not there.

- On September 24, 2025 PO attempted another unannounced visit. When she approached the door and rang the bell, someone inside asked, "Who is it?" PO identified herself. Then no one answered again or opened the door although there was someone inside the house.

The sixth and seventh violations involve new charges and new lines of credit. The Judgment states that Defendant cannot open any new credit or lines of credit as a special condition of her release. In early December 2025, PO conducted a credit

14

check. On the credit report, PO observed a new credit card and student loans. Defendant never asked for permission to open a credit card or to obtain any new loans. Before the Second Superseding Petition was filed, Defendant had never informed her PO that she was a full-time student. PO testified that if she had known that Defendant was a student, the employment requirement would have been waived. After the Second Superseding Petition was filed, Defendant submitted a statement to her PO that she is in school but did not provide any supporting documentation. PO had not been able to verify whether Defendant was in fact a student at the University of Houston as claimed.

The Court finds that the PO is a credible witness. Her testimony supports the charges that Defendant failed to pay restitution, failed to follow her PO's instructions, failed to participate in mental health evaluations and treatments, failed to allow for home visits, and obtained new credit and loans without the approval of her PO. The Court is aware of Defendant's history of non-compliant behavior both before conviction and after. Defendant has refused to cooperate with her PO and has attempted to dictate the terms of her supervision, including where and when she would meet with her PO, whether she would pay restitution, and whether she would follow any other instructions or Court orders.

### B. Testimony of Postal Inspector Negates Defendant's Excuse.

The Government called PI to testify about Defendant's failure to appear in

court on December 12, 2025. Defendant represented to the Court in myriad filings in this case and the habeas case that the reason she missed the supervised release violation hearing set for December 12, 2025 was that she had a medical emergency and was hospitalized. *See, e.g.,* ECF Nos. 419, 419-1. Defendant presented the Court with a note purporting to be a doctor's excuse, justifying her failure to appear and establishing that she was hospitalized. ECF No. 415, 419-1 at 3.

PI investigated whether Defendant's claim of a medical emergency warranting hospitalization was true. He testified that it was not true. PI obtained the records from the emergency room depicted in the excuse note. HCA Houston Healthcare-West is a freestanding facility on Highway 6. It is an emergency room not located on a hospital campus. PI confirmed that Defendant was at that emergency room on December 12, 2025 at 2:30 a.m. until 4:30 a.m. She complained of chest pain. The doctor provided a prescription for anti-inflammatory medicine with no restrictions. The work excuse provided to the Court is a standard form that is included in every discharge package for all patients. PI testified if a patient was unable to appear in court, the facility would provide a more specialized note specific to the individual regarding the condition treated. PI testified that Defendant had an X-ray, and EKG. She had no significant findings to warrant treatment or admission to the hospital. Likewise, she had no condition that prevented her from coming to court. PI further testified that it was not true that Defendant was hospitalized that

16

day to prevent her from coming to court.

On cross-examination, PI testified that he met with the treating physician to confirm the information and obtained the medical records. He confirmed that the emergency room where Defendant was examined was not attached to a hospital, Defendant was not admitted to a hospital, Defendant was not hospitalized on December 12, 2025.

The Court finds PI's testimony is credible. He established that Defendant's claimed hospitalization as the reason she missed the SRV hearing set for December 12, 2025 was untrue. The Court finds that Defendant's statements in Court and in her filings to justify her actions are not credible.

## IV.    ANALYSIS: THE RECORD SUPPORTS REVOKING DEFENDANT'S SUPERVISED RELEASE AND SENTENCING HER TO ADDITION PRISON TIME.

Based on the testimony offered, a preponderance of the evidence establishes that there is a factual basis for revocation on violations 1through 4 and 6 through 7.

The record is replete with evidence that Defendant has refused to allow her PO to supervise her. "Supervised release can only be successful with honesty and cooperation on the part of the Defendant, building trust between the person supervised and the supervisor. Failure to cooperate makes supervision impossible." *United States v. Kasali*, No. 4:21-CR-54, 2025 WL 3755900, at *3 (S.D. Tex. Dec. 1, 2025), adopted, No. CR H–21-54, 2025 WL 3755607 (S.D. Tex. Dec. 29, 2025).

17

*See also United States v. Latham*, No. 01-CR-40047-SMY, 2026 WL 205584, at *1 (S.D. Ill. Jan. 27, 2026) (denying early termination of supervised release in part because of defendant's "refusal to cooperate with his probation officer").

Defendant refused to pay restitution as ordered. Defendant refused to follow instructions about employment and her claimed disability that prevented her from working. Now, Defendant claims that she has been a full-time student, and that is what prevented her from working full-time. She failed to provide this information to her PO. Defendant refused to cooperate when her PO made unannounced home visits. Finally, Defendant violated her SRT when she opened new credit and loans without permission. *United States v. Bates*, No. 6:20-CR-00058-JDK, 2025 WL 1794362, at *3 (E.D. Tex. June 26, 2025) (concluding defendant's supervised release should be revoked because "he refused to complete the initial intake documentation as instructed by the probation officer"), *adopted*, No. 6:20-CR-00058-JDK, 2025 WL 1791158 (E.D. Tex. June 27, 2025). While she did report to the mental health evaluation appointments, Defendant failed to fully participate to enable the providers to assess her and make recommendations.

This is sufficient to revoke her supervised release. *United States v. Dulin*, No. 4:07-CR-173-ALM, 2021 WL 841404, at *1 (E.D. Tex. Feb. 26, 2021) (recommending defendant's supervised release be revoked because he "failed to report and participate in Mental Health Treatment as directed"). *See also United*

18

*States v. Johnson*, No. 24-10194, 2025 WL 32820, at *1 (5th Cir. Jan. 6, 2025) (affirming revocation sentence where defendant, among other things, "refus[ed] to participate in residential substance abuse treatment services"), *cert. denied*, 145 S. Ct. 2690 (2025);  United *States v. Bolden*, No. 22-40839, 2023 WL 4540478, at *3 (5th Cir. July 14, 2023) (affirming revocation of supervised release in part because defendant "fail[ed] to participate in drug and alcohol treatment, as directed, by failing to submit to drug tests" and "fail[ed] to participate in mental health treatment, as directed"); *United States v. Pete*, No. 1:05-CR-49, 2010 WL 5139846, at *2 (E.D. Tex. Dec. 9, 2010) (finding "defendant violated a special condition of his supervised release by failing to cooperate and participate in a program of testing and treatment for drug abuse").

For a Grade C violation the guideline range is between three and nine months of imprisonment.  U.S.S.G. § 7C1.5. The maximum term of imprisonment allowed under the statute is 3 years for false statement in counts 1&2 (Class B felony) and bank fraud in counts 3&4 (Class B felony).[10] *See* 18 U.S.C. § 3583(e)(3) (the court may revoke a term of supervised release and require defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense up to 3 years for a class B felony).

---

[10] An offense is classified as a Class B felony if the maximum term of imprisonment authorized is twenty-five years or more. 18 U.S.C. § 3559. All counts provide for up to 30 years in prison, making the false statement and bank fraud counts Class B felonies. 18 U.S.C. §§ 1014, 1344.

In crafting the appropriate revocation sentence, a court may impose (1) a sentence within the guidelines range, (2) "an upward or downward departure as allowed by the Guidelines," and (3) "a non-Guideline sentence or a variance that is outside of the relevant Guidelines range." *United States v. Brantley*, 537 F.3d 347, 349 (5th Cir. 2008) (internal quotation marks and citation omitted).  A court may impose any sentence that falls within the statutory maximum term of imprisonment allowed for the revocation sentence, 18 U.S.C. § 3583(e)(3), and a court must consider the permissible factors enumerated in 18 U.S.C. § 3553(a), along with the nonbinding policy statements found in Chapter Seven of the Sentencing Guidelines. *United States v. Walker*, 742 F.3d 614, 616 (5th Cir. 2014).  The permissible § 3553 factors include: the defendant's criminal history and characteristics; the need for adequate deterrence; the need for protection of the public; the need for effective care, training, or treatment; the kinds of sentence and sentencing range established for the defendant's applicable category of offense; the pertinent Sentencing Commission policy statements; the need to avoid unwarranted sentencing disparities; and the need to provide restitution to any victims.  *See* 18 U.S.C. § 3583(e).  The Court is considering only the allowable § 3553 factors, and to the extend the Court has looked at the seriousness of the allegation/s, it has done so not as a primary consideration, but a secondary one.  *See United States v. Rivera*, 784 F.3d 1012, 1016–17 (5th Cir. 2015).  The primary sentencing goal upon revocation of supervised release is to

sanction the defendant for failing to abide by the terms of the supervision. *See* U.S.S.G. Ch. 7, Pt. A, intro. comment ¶ 3(b); *United States v. Miller*, 634 F.3d 841, 843 (5th Cir. 2011).

Here, the U.S. Probation Office recommended a sentence of three years imprisonment, with no term of supervised release following release. Defendant has been in custody since January 14, 2026. The Government agreed with Probation's recommendation.

Counsel for Defendant opposed the recommended sentence and requested the Court to allow Defendant to remain on release but to assign her to a different PO and require her to obtain mental health treatment.

The Court advised counsel and Defendant that the recommendation would be that Defendant's TSR be revoked, and that she be sentenced to the maximum term of imprisonment, to be served concurrently for all violations, with credit for time served in federal custody,[11] and no supervised release upon her release from prison.

## V.   RECOMMENDATIONS

The Court find that Defendant committed Violations One, Two, Three, Four, Six, and Seven, thereby violating her term of supervised release.  ECF Nos. 396,

---

[11] "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences. . . that has not been credited against another sentence."  18 U.S.C. § 3585(b).  Furthermore, the Advisory Guidelines recommend that the term of imprisonment shall be served consecutively to any sentence of imprisonment that the Defendant is currently serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of supervised release.  *See* U.S.S.G. § 7B1.3(f).

413, 414. Therefore, it is **RECOMMENDED** that Defendant's term of supervised release be **REVOKED**. It is further **RECOMMENDED** that Defendant be sentenced to three years of imprisonment, to be served concurrently for all violations, with credit for time served in federal custody, with no supervised release following her release from prison.

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b). Failure to file timely objections waives the party's right to review. will preclude review. Fed. R. Crim. P. 59(b)(2).**

Signed, at Houston, Texas, on April 22, 2026.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**

22